UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert George Head, Jr.,   Civil No. 07-3555 (DWF/JJG)

    Plaintiff,

v.   REPORT AND RECOMMENDATION

United States of America, Donovan Wind,
Jason Lawrence, Patrick Mills, John
Patrick Egelhof, and Clifford Ben
Wardlaw,

    Defendants.

JEANNE J. GRAHAM, United States Magistrate Judge

    Plaintiff Robert George Head, Jr. ("Head") is an inmate at the Federal Correctional Institution in Pekin, Illinois. He brings this action against several alleged federal officials pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The case is presently before the Court on Defendants' Motion to Dismiss (Doc. No. 81) and Head's Motion to Strike Defendants' Motion to Dismiss (Doc. No. 83). For the reasons discussed below, the Court recommends that the motion to dismiss be granted, the motion to strike be denied, and all claims be dismissed with prejudice.

I.    PROCEDURAL POSTURE OF DEFENDANTS' MOTION

    Head is proceeding in forma pauperis. The operative pleading in this case is the Third Amended Complaint, which Head timely filed on February 9, 2009. After receiving two extensions of time to respond, Defendants Patrick Mills, Donovan Wind, Jason Lawrence, John Patrick Egelhof, Clifford Ben Wardlaw, and the United States of America moved to dismiss the Third Amended Complaint on April 13, 2009. Rather than proceeding under the traditional

framework of Federal Rule of Civil Procedure 12, however, Defendants invoked 28 U.S.C. § 1915.

Title 28 U.S.C. § 1915 authorizes a court to review sua sponte the pleading of a pro se plaintiff. *See* 28 U.S.C. § 1915(e)(2). It does not create a procedural device through which a party may move to dismiss. The Court will therefore regard Defendants' motion as one to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Bilal v. Lockhart*, No. 93-1798, 1993 WL 382028, at *1 (8th Cir. Sept. 30, 1993); *Caffey v. Johnson*, 883 F. Supp. 128, 131 n.1 (E.D. Tex. 1995).

However, as it is also appropriate for the Court to sua sponte review the Third Amended Complaint under § 1915 and recommend dismissal of any claims that are frivolous, malicious, or fail as a matter of law, *see* 28 U.S.C. § 1915(e)(2), the Court will undertake this review simultaneously.

## II. STANDARDS OF REVIEW

Dismissal under Rule 12(b)(6) is proper when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations that are "merely consistent with" liability are insufficient to create plausibility. *Id.* (quoting *Twombly*, 550 U.S. at 557).

A court must typically disregard matters outside the pleadings on a Rule 12(b)(6) motion,

but it may take into account matters of public record, documents attached to the complaint, and materials embraced by the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations and quotations omitted). A court is also expected "to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

Under § 1915, a court may dismiss at any time a complaint filed by a pro se litigant if the complaint is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). A claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Such a claim "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.* Whereas "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law," § 1915 confers a greater power to dismiss, to effect its purpose of discouraging baseless lawsuits. *Id.* at 326-27. That is, § 1915 grants a court "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 327. A complaint may be dismissed under § 1915 before service and without leave to amend. *See Christiansen v. Clarke*, 147 F.3d 655, 657, 658 (8th Cir. 1998).

### III. FACTUAL ALLEGATIONS IN THE THIRD AMENDED COMPLAINT

Head alleges the following facts in the Third Amended Complaint. On January 19, 2002, Head was arrested, advised of his *Miranda* rights, and transported to the Red Lake Tribal Jail. He was placed in a cell with a non-functioning toilet. Head's sister, and a friend named Patricia Mountain, attempted to post Head's bail later that day, but were told by an unidentified worker he would not be released per the instructions of Federal Bureau of Investigation Agent John Patrick Egelhof. They were also told that Head's bail had been set at $20,000. When Head asked

about release procedures, he was told he would remain in jail until Egelhof instructed otherwise.

Fort Totten Tribal Police Officer Donovan Wind called the Red Lake Tribal Jail from the scene of the crime. He said Head should be charged with two counts of third degree assault, and his bail should be set at $20,000. After Wind arrived at the jail, Head was taken to his office, where Wind and Egelhof waited. When Head exercised his right to remain silent, Egelhof threatened he would "pin the whole thing" on Head. (Third Am. Compl. ¶ 14.) Head remained silent and returned to his cell, provoking Egelhof and Wind to fabricate evidence against him.

When Head returned to his cell, he found it contaminated with someone else's blood, which he got on his hands. Head asked a guard, who is not identified, if he could be moved to a cell with running water and a functioning toilet, but his request was denied.

The day after the arrest, on January 20, 2002, Assistant United States Attorney Clifford Wardlaw received a brief synopsis of the investigation, but declined to bring federal charges against Head. Head was arraigned in Red Lake Tribal Court on January 23, 2002, on seven charges, including five offenses under the Indian Major Crimes Act. The Tribal Court reduced Head's bail to $3,500 and ordered him to be relocated to a cell with running water. Head was moved to a cold, one-man cell with a broken window and that housed four other men. The shower was clogged with toilet paper, scabs, dirt, and debris. When Head complained, an unnamed guard laughed and said the jail had been condemned.

Head received a message on January 25, 2002, that Mountain was coming to post his bail, but that his release would have to be approved by either Wind or Oglala Sioux Tribal Police Officer Patrick Mills. By January 30, 2002, Head was still in jail, and he asked Wind why he had been denied bail. Wind asked Head to waive his *Miranda* rights. The next day, Head stepped on a tattoo needle and was told he had to sign a *Miranda* waiver before receiving medical attention.

4

He refused and was forced to wash his foot in a shower basin filled with sewer water.

While Head was confined at the Red Lake Tribal Jail, his daughter wrote him several letters. Head made copies of the letters and left them on a desk for his attorney. Wind took the notes instead.

On February 8, 2002, Head was eating his lunch in his cell on the floor, next to the toilet. The sprinkler system activated and sprayed contaminated water on Head and throughout the cell. Head was not allowed to shower and was forced to sleep under a sewage-soaked blanket.

A federal magistrate judge signed a criminal complaint against Head on February 12, 2002, and Head was transported to Red Lake Tribal Court for an extradition hearing. While Head was away from his cell, Lawrence discarded material that Head had gathered for his defense. During Head's federal court appearance, Egelhof was not personally present to testify to probable cause for the complaint. Wardlaw later called the Red Lake Tribal Court and the prosecutor and threatened them with federal charges and incarceration if they did not extradite Head. Faced with these threats, the Red Lake Tribal Court ordered Head extradited.

Based on these alleged facts, Head brings a number of claims against Mills, Wind, Lawrence, Egelhof, and Wardlaw. In his "First Cause of Action," he alleges that Wind, Egelhof, and Mills violated the Eighth Amendment by requiring excessive bail and by holding him in a condemned and unsanitary jail, where he contacted hepatitis and tuberculosis. In the "Second Cause of Action," Head alleges that Wind and Egelhof violated the Fifth and Sixth Amendments by questioning him after he invoked his right to have an attorney present. In the "Third Cause of Action," Head claims that Wind and Mills acted in violation of the Fifth Amendment by holding him in jail for more than twenty-four hours without an initial bond hearing. In the "Fourth Cause of Action," Head asserts his Fourth Amendment rights were infringed when Mills, Wind, and

Lawrence seized his letters and other paperwork without a warrant. In the "Fifth Cause of Action," Head alleges Wind, Lawrence, Mills, Wardlaw, and Egelhof denied him various Fifth, Sixth, and Fourteenth Amendment rights in federal court proceedings by not reading him his rights in court, depriving him of a speedy trial, not informing him of the nature of the accusations against him, and not permitting him to confront adverse witnesses or obtain favorable witnesses. Finally, in the "Sixth Cause of Action," Head contends he was falsely imprisoned without probable cause in violation of the Fourth and Fifth Amendments.

Head alleges that the five named Defendants were employees of the United States during the events in question, and that the tribal law enforcement officers were acting pursuant to a "deputization agreement" with the Bureau of Indian Affairs. He is suing all individual Defendants in both their individual and official capacities. Head also names the United States as a Defendant.

## IV. ANALYSIS OF HEAD'S CLAIMS UNDER RULE 12(b)(6) AND SECTION 1915

Under *Bivens*, a plaintiff may bring suit against federal officials who commit constitutional violations in their individual capacities. *See Bivens*, 403 U.S. at 389. Ordinarily, Bivens does not apply to tribal law enforcement officers because they are not federal employees. Head has alleged in the Third Amended Complaint, however, that the defendant tribal officers were acting as employees of the federal government under a contract with the federal government. Tribal officers can be considered, and sued as, federal actors when they act pursuant to a contract between a tribe and the Bureau of Indian Affairs that authorizes tribal officers to enforce federal laws. *See United States v. Schrader*, 10 F.3d 1345, 1350 (8th Cir. 1993). Head has specifically alleged that the defendant tribal officers were acting under such an agreement, and the Court must accept Head's allegations as true on this motion to dismiss.

6

A *Bivens* action may not be maintained against the United States or its employees in their official capacity because of sovereign immunity. *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998). Therefore, before reaching the merits of Head's claims, the Court will recommend that all claims brought against Defendants in their official capacities and all claims brought against the United States be dismissed.[1]

### A. Eighth Amendment Claims

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. Head alleges that Wind, Egelhof, and Mills violated the Eighth Amendment in two respects: by requiring him to post excessive bail, and by holding him in a jail with unsanitary conditions where he contacted hepatitis and tuberculosis. Because Head's Eighth Amendment claims arose when he was a pretrial detainee, those claims are properly analyzed under the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). The distinction is largely without a difference, however, because "[u]nder the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (quotation omitted).

#### 1. Excessive Bail

Bail is excessive when set in an amount higher than necessary to give adequate assurance that the defendant will appear for trial and sentencing. *See United States v. Leisure*, 710 F.2d 422, 424 (8th Cir. 1983) (quoting *Stack v. Boyle*, 342 U.S. 1, 4-5 (1951)). Only a judicial officer

---

[1] To the extent that Head's false imprisonment claim could be construed as brought under the Federal Tort Claims Act, the Court address that claim in Part IV.C.

may set bail. *See* 18 U.S.C. § 3142; *Smith v. City of Hammond*, 388 F.3d 304, 306-07 (7th Cir. 2004); *Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997); *Allen v. United States*, 386 F.2d 634, 635 (D.C. Cir. 1967).

Head asserts he was told on January 19, 2002, that Egelhof and Wind had set his bail at $20,000 cash. There is no mention of Mills' involvement in setting the bond amount. According to Head's own factual allegations, Egelhof and Wind are law enforcement officers, not judicial officers, and thus, they could not have set the bail amount. In this respect, Head's excessive bail claim is frivolous.

In some jurisdictions, a law enforcement officer may set temporary bail, and an officer who engages in this judicial function is entitled to absolute immunity. *See Walczyk v. Rio*, 496 F.3d 139, 164-65 (2d Cir. 2007) (citations omitted) ("[B]ecause the setting of bail is a judicial function, . . . absolute immunity extends to police officers when they perform that function pursuant to statute."). Thus, even assuming that Egelhof and Wind were authorized to set temporary bail and did so at $20,000, they are entitled to absolute immunity against Head's excessive bail claim. Under this scenario, Head's claim fails as a matter of law.

Because Head's excessive bail claim is both frivolous and legally insufficient, it should be dismissed.

### 2. Cruel and Unusual Punishment

Prison officials are charged with taking reasonable steps to protect the safety of inmates and to maintain a sanitary environment. *See Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). There is both a subjective and an objective component to a prison official's liability. The official's action or inaction must have caused an objectively serious deprivation of rights, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and the official must have acted with "a

subjectively culpable state of mind," *Perkins v. Grimes*, 161 F.3d 1127, 1130 (8th Cir. 1998). In the prison context, that state of mind is deliberate indifference to an inmate's health or safety. *Perkins*, 161 F.3d at 1130 (quotation omitted). As pronounced by the United States Supreme Court, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Head's deliberate indifference claim fails as a matter of law on both fronts. First, the element of causation is entirely lacking. There are no allegations that Wind, Egelhof, or Mills were directly involved in any objectively serious deprivation of rights. Nor does Head adequately allege that these individuals were liable as supervisors. "Unless [a] plaintiff pleads an 'affirmative link' between the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise,' dismissal is appropriate." *Bellecourt v. United States*, 784 F. Supp. 623, 633 (D. Minn. 1992) (quoting *McKay v. Hammock*, 730 F.2d 1367, 1374 (10th Cir. 1984)). Head's assertions such as an unnamed jailer told him he should speak with Wind or Mills, and that Head wrote Wind a letter to which Wind never replied, do not sufficiently link Wind, Mills, or Egelhof to a failure to supervise or to exercise control or direction over conditions at the Red Lake Tribal Jail. In *Twombly*'s terms, Head fails to bridge the gap between possible and plausible.

Second, there are no factual allegations to support the requisite state of mind by Wind, Egelhof, or Mills. With respect to Head's claim that he contracted diseases from unsanitary conditions of the jail, he does not allege that these Defendants knew of, or disregarded, a risk to

9

Head's health or safety. The same is true for the alleged blood in his cell, dirty shower, malfunctioning sprinkler system, and tattoo needle. Although Head alleges he complained to unidentified jailers, he did not complain to the named Defendants. Head apparently later wrote to Mills and Wind to complain of the unsanitary conditions, but this was after the alleged exposure had already occurred.

Head's cruel and unusual punishment claim fails as a matter of law because he has not alleged specific facts from which to infer either objective causation or subjective knowledge by Wind, Egelhof, or Mills.

### C. Fourth Amendment Claims

Head asserts his Fourth Amendment rights were violated when Mills, Wind, and Lawrence seized papers from his cell without a warrant. This claim fails as a matter of law because "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *Hudson*, 468 U.S. at 526. Head also suggests that the seizure violated his attorney-client privilege, but that privilege is not a federal constitutional right or otherwise protected by federal law, and thus not cognizable under *Bivens. See Lovelace v. Whitney*, 684 F. Supp. 1438, 1442 n.6 (N.D. Ill. 1988).[2]

Head next contends he was imprisoned without probable cause at the Red Lake Tribal Jail in violation of the Fourth Amendment. To adequately state a Fourth Amendment claim in this regard, Head must allege facts showing that he was seized and that the seizure was unreasonable. *See Hawkins v. City of Farmington*, 189 F.3d 695, 701-02 (8th Cir. 1999). Head

---

[2] Even if infringement of the attorney-client privilege did give rise to a *Bivens* claim, it would arise under the Sixth Amendment, not the Fourth. *See Lovelace*, 684 F. Supp. at 1422 n.6. Head has not pled the seizure of his papers as a Sixth Amendment claim, nor has he alleged facts sufficient to state a claim of unconstitutional deprivation of counsel.

alleges only that he was arrested on January 19, 2002. He does not contend that the seizure was unreasonable, nor has he alleged any facts supporting such an inference. Indeed, the decision by the Eighth Circuit Court of Appeals in Head's criminal case shows that the seizure was reasonable and supported by probable cause.[3]

> Early on the morning of January 19, 2002, Head was smoking crack cocaine at the home of his then-girlfriend, Patricia Mountain. Also present and smoking crack cocaine were Kevin Boland, Alejandro Garcia, and Alana Brown, Head's daughter. At some point, Head and Brown departed. Sometime thereafter, Garcia and Mountain departed in Garcia's car. Head and Brown met up with Jeffrey Dolson and Arlen Rice, and the four of them, riding in Head's truck, encountered Garcia's car. Head began following Garcia around the reservation and at one point rammed Garcia's car with his truck and told Garcia that he was going to kill him. Head and the others in his truck then returned to Mountain's residence, where Head kicked in the door. He approached Boland and held a pistol to his head, demanding money and drugs. Head, Dolson, and Brown then assaulted Boland and departed. Garcia eventually returned to Mountain's residence and discovered the injured Boland. Shortly thereafter, Head and others returned, and Garcia and Boland fled on foot. Head chased and caught Garcia and then assaulted him. The assault ended when a police officer arrived on the scene.
>
> Head was arrested on tribal charges by the Red Lake Tribal Police Department later that morning.

*United States v. Head*, 407 F.3d 925, 927 (8th Cir. 2005). Thus, Head's Fourth Amendment claim based on unreasonable seizure is not a plausible claim.

In Head's "Sixth Cause of Action," he includes the tort of false imprisonment as part of his Fourth Amendment claim. But the Federal Tort Claims Act provides the exclusive remedy for a claim of false imprisonment against a federal official. *See Brown v. Armstrong*, 949 F.2d 1007, 1013 (8th Cir. 1991). To the extent Head claims he was falsely imprisoned in violation of

---

[3] The Court may consider this decision as a matter of public record. *See United States v. Mentzos*, 462 F.3d 830, 843 n.1 (8th Cir. 2006).

the Fourth Amendment, his claim fails.

Assuming Head had cited the proper authority for his claim, it still could not survive dismissal because he fails to state a claim for false imprisonment. In Minnesota, a person is falsely imprisoned when confined unwillingly and without legal justification. *Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008) (citing *Gleason v. Metro. Council Transit Ops.*, 563 N.W.2d 309, 319 (Minn. Ct. App. 1997)). As the underlying criminal record shows, there was sufficient probable cause to arrest Head and confine him at the Red Lake Tribal Jail on January 19, 2002.

A law enforcement officer must allow a detained individual to post bond, and if the opportunity is wrongfully denied, the continued detention might constitute false imprisonment. *See Missouri v. Fidelity & Cas. Co.*, 107 F.2d 343, 349-50 (8th Cir. 1939) (applying Missouri state law). Head's failure to allege he was actually denied the opportunity to post bond is fatal to his claim. In paragraph 11 of the Third Amended Complaint, Head alleges that his sister and Mountain arrived at the jail to post bail, but he does not allege they actually attempted to do so and were not allowed. The same deficiency occurs in paragraph 20, where Head alleges he called his brother and asked him to post his bail, and again in paragraph 26, in which Head claims he received a message that Mountain was coming to post his bail. Because Head failed to plead that he was actually denied the opportunity to post bail, he cannot base his false imprisonment claim on his continued detention.

All of Head's Fourth Amendment claims fail as a matter of law and should be dismissed.

### D. Fifth Amendment Claims

Head alleges that Wind and Egelhof violated the Fifth Amendment by questioning him after he invoked his right to remain silent. The Fifth Amendment guarantees that no one in a

criminal case may be compelled to incriminate himself. In *Miranda v. Arizona*, the United States Supreme Court declared this privilege applicable to custodial interrogations. *See* 384 U.S. 436, 467 (1966). *Bivens*, however, does not provide a remedy for a *Miranda* violation. *See Hannon v. Sanner*, 441 F.3d 635, 636 (8th Cir. 2006) (holding that a plaintiff cannot recover for a violation of *Miranda* under § 1983); *Duffy v. Wolle*, 123 F.3d 1026, 1036-37 (8th Cir. 1997) (recognizing that § 1983 law applies to *Bivens* actions). The sole remedy for a *Miranda* violation is exclusion of the compelled statement. *Hannon*, 441 F.3d at 636-37.

Head also alleges that Wind and Mills denied him his Fifth Amendment right to due process of law by delaying his bail hearing. Head was arrested and charged on Saturday, January 19, 2002. He was arraigned in Red Lake Tribal Court four days later, on Wednesday, January 23, 2002. The Due Process Clause of the Fourteenth Amendment requires a prompt first appearance for a pretrial detainee. *See Hayes v. Faulkner County*, 388 F.3d 669, 673 (8th Cir. 2004) (citations omitted). Due process is offended when (1) the detainee is detained for an extended period of time, without an initial appearance; (2) the government's conduct offended substantive due process; and (3) "the totality of circumstances shocks the conscience." *See id.* (citations omitted). Whether an extended detention shocks the conscience is a question of law. *Luckes v. County of Hennepin*, 415 F.3d 936, 940 (8th Cir. 2005) (acknowledging that "post-arrest detentions of fifty-seven days, thirty-eight days, and eighteen days sufficiently shock the conscience to establish a substantive due process violation.").

Head was arrested on a Saturday and remained detained on Sunday. Martin Luther King, Jr.'s birthdate was observed on Monday, and courts are not typically open for business on that public holiday. Head was arraigned two days later on Wednesday. Head does not allege any injury caused by the four-day detention, and he remained detained after the bail hearing. The

Court concludes here, as a matter of law, that Head's four-day detention was not of an extended detention, nor does it shock the conscience.

### E. Sixth Amendment Claim

In Head's "Second Cause of Action," he alleges that Wind and Egelhof violated the Sixth Amendment by questioning him after he asked for an attorney. He refers to paragraph 9 in the factual section of the Third Amended Complaint to support this claim, but paragraph 9 does not contain any assertions that Head was questioned after his arrest.

Perhaps Head meant to refer to paragraph 14, in which he claims that Wind and Egelhof attempted to question him in Wind's office on the day of his arrest, but Head also implies in paragraph 14 that questioning ceased when Head said he wanted an attorney. Similarly, in paragraph 29, Head claims that Wind said he would speak with Head only if Head waived his *Miranda* rights, but Head does not assert he either waived his rights or spoke to Wind.

Nowhere in the Third Amended Complaint does Head allege that he made a statement in response to police interrogation or that an incriminating statement was used against him at trial. Lacking this, he has not sufficiently alleged a Sixth Amendment violation. *See Fellers v. United States*, 540 U.S. 519, 523 (2004) (citation omitted) (describing a Sixth Amendment violation as a situation in which officers deliberately elicit an incriminating statement from a defendant in the absence of counsel and then use the statement against the defendant at trial); *see also Owsley v. Bowersox*, 234 F.3d 1055, 1058 (8th Cir. 2000) (requiring a showing of actual prejudice for a Sixth Amendment right to counsel violation).

### F. Various Alleged Trial Errors

Head asserts that Wind, Lawrence, Mills, Wardlaw, and Egelhof violated his Fifth, Sixth, and Fourteenth Amendment rights during his federal criminal proceedings by failing to read him

his rights in court, not informing him of the nature of the charges against him, not permitting him to confront adverse witnesses or obtain favorable witnesses, denying him equal protection under the law, and depriving him of a speedy trial.

These alleged errors cannot form the basis of a *Bivens* claim against the named Defendants for several reasons. First, there are no factual allegations of direct, personal participation in the alleged constitutional deprivations by the individual defendants. Indeed, Head fails to include any specific facts supporting the alleged errors; he merely lists the alleged violations in his summary "Fifth Cause of Action." Second, the responsibility to ensure the particular rights at issue is not that of a law enforcement officer or a prosecutor, but the trial court. Third, the alleged errors are impermissible collateral attacks on Head's conviction, because a favorable judgment would necessarily imply the invalidity of his conviction. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). This is true even though Head is seeking equitable and monetary relief and not reversal of his conviction. *See id.* at 483.

## V. HEAD'S MOTION TO STRIKE THE MOTION TO DISMISS

Head moves to strike Defendants' motion to dismiss for failing to comply with the Federal Rules of Civil Procedure, for violating the Code of Professional Conduct, for citing authority incorrectly, and as untimely. None of these arguments have merit. With particular respect to the timeliness argument, the Court notes that Defendants formally requested, and were granted, extensions of time to respond to the Third Amended Complaint.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss (Doc. No. 81) be **GRANTED**;

2. Plaintiff's Motion to Strike Defendants' Motion to Dismiss (Doc. No. 83) be **DENIED**; and

3. This case be **DISMISSED WITH PREJUDICE**.


Dated: November 30, 2009					s/ *Jeanne J. Graham*

							JEANNE J. GRAHAM
							United States Magistrate Judge


**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **December 14, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.